# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

BAKERY BLING, *doing business as*
LITTLE WAISTED LLC,

                Plaintiff,

v.

MATRIX PACKAGING MACHINERY
LLC and PROMACH INC.,

                Defendants.

Case No. 21-CV-1399-JPS

**ORDER**

    Before the Court are Plaintiff Bakery Bling's ("Plaintiff") motions for declaratory judgment, ECF No. 54, and for reconsideration of an order by District Judge Patrick R. Wyrick of the United States District Court for the Western District of Oklahoma, ECF No. 57. For the reasons provided below, the Court will deny Plaintiff's motion for declaratory judgment and will grant in part and deny in part Plaintiff's motion for reconsideration.

## 1. BACKGROUND

    This case was filed on March 16, 2021 in the Western District of Oklahoma. *See* ECF Nos. 1, 30. On May 24, 2021, Defendants Matrix Packaging Machinery LLC ("Matrix") and ProMach Inc. ("ProMach") (collectively, "Defendants") filed a motion to transfer the case. ECF No. 18. On December 8, 2021, Judge Wyrick granted the motion to transfer. ECF No. 29.[1] To interpret whether "the forum selection clause is part of the contract," Judge Wyrick performed a choice of law analysis and concluded

---

[1]The Court may occasionally hereafter refer to this order as the "transfer order."

that Wisconsin had the most significant relationship to the contract (also referred to herein as the "Proposal"). *Id*. at 5–8. Applying Wisconsin law, Judge Wyrick concluded that "the contract between Matrix and Bakery Bling validly incorporated the full Terms and Conditions of Sale by reference." *Id*. at 8. The Terms and Conditions of Sale included the forum selection clause, which provided that litigation arising out of the parties' agreement could be brought exclusively in the state in which "Seller has its principal place of business." *Id*.; ECF No. 52-2 at 4. The case was accordingly transferred to the Eastern District of Wisconsin, ECF Nos. 29, 30, and was assigned to this branch of the Court.

On July 5, 2022, Plaintiff filed a motion to amend its Complaint. ECF No. 44. The Court granted in part and denied in part that motion, ECF No. 50, and Plaintiff filed an Amended Complaint pursuant to that order on August 23, 2022. ECF No. 51. On September 1, 2022, Plaintiff filed the present motion for declaratory judgment. ECF No. 54.

On September 12, 2022, the parties requested a judicial settlement conference, ECF No. 56, and the Court referred the parties to Magistrate Judge William E. Duffin for mediation, *see* September 13, 2022 text only order. On September 19, 2022, Plaintiff filed the present motion for reconsideration of Judge Wyrick's December 8, 2021 order granting Defendants' motion to transfer. ECF No. 57. At the time of the filing of its motion for reconsideration of the 2021 transfer order, the dispositive motion deadline imposed by the Court had passed, and the scheduled trial date was approximately four months away. *See* ECF. No. 39.

## 2.    MOTION FOR RECONSIDERATION

Plaintiff seeks reconsideration of the transfer order issued by Judge Wyrick. *See* ECF Nos. 58, 29. Plaintiff argues that "the findings in the

*Transfer Order* go well beyond the issue of venue and that Judge Wyrick made clear error both in applying Wisconsin's common law governing the incorporation of an extrinsic document by reference into a contract and in his factual findings." ECF No. 58 at 1. In other words, Plaintiff alleges both legal and factual error. Plaintiff writes further that "Judge Wyrick's rulings have prejudiced Bakery Bling and this Court has good grounds to exercise its powers to vacate the Transfer Order, in part." *Id.* Plaintiff requests the Court to partially vacate that transfer order, "save and except that part of the Transfer Order transferring this case to the Eastern District of Wisconsin." ECF No. 57 at 1.

Defendants oppose the motion because it fails to establish "the existence of a manifest error within [Judge Wyrick's order] granting Defendants' motion to transfer." ECF No. 64 at 1. Defendants argue that "the [reconsideration] motion is not a proper vehicle for raising new arguments, all of which have been available to Bakery Bling for over 15 months and none of which are supported by newly discovered evidence." *Id.*

### 2.1 General Standards

"Ordinarily, a motion for reconsideration is decided by the judge who made the original ruling." *Williams v. Mjc Acquisition*, No. 20-cv-68 DRL-SLC, 2020 U.S. Dist. LEXIS 109112, at *4 (N.D. Ind. June 22, 2020). "When a party seeks reconsideration of an order transferring a case to another district and that case has already been transferred, however, a unique situation arises to permit another district judge to reconsider the previous district judge's order." *Id.* at *4–5. Even in that unique situation, however, "[t]he court's discretion in reconsidering the order is significantly limited nevertheless." *Id.* at *5.

First, the reconsidering court must adhere to the law of the case doctrine. *Id.* "Though the court 'has the power to revisit prior decisions of its own or of a coordinate court in any circumstance,' it 'should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice." *Id.*

Moreover, the statute under which a district court orders transfer of venue, 28 U.S.C. § 1404, affords the transferring court broad discretion: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "Together, the law of the case doctrine and the district court's broad discretion under 28 U.S.C. § 1404(a) presents an uphill battle to reverse the transfer order . . . ." *Williams*, 2020 U.S. Dist. LEXIS 109112, at *6. And "[d]iscarding a forum selection clause remains difficult, especially given the deferential standard at the motion to reconsider stage." *Id.* at *8 (internal citation omitted).

### 2.2 Standard of Fed. R. Civ. P. 54(b)

Motions for reconsideration under Federal Rule of Civil Procedure 54(b) are granted only in rare circumstances. They are appropriate in very few contexts, such as where the Court has "patently misunderstood a party," "has made a decision outside the adversarial issues presented to the Court," "has made an error not of reasoning but of apprehension," or where there has been a "controlling or significant change in the law or facts since the submission of the issue to the Court." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Such a motion may also serve to correct "manifest errors of law or fact." *Rothwell Cotton Co. v.*

*Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (internal citation omitted). Reconsideration is "not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1270 (7th Cir. 1996).

### 2.3    Analysis

Plaintiff argues not that there has been a controlling or significant change in law or fact, nor that Judge Wyrick "patently misunderstood" Plaintiff, but rather that Judge Wyrick made a decision "outside the adversarial issue" presented to him—namely, outside of the issue of venue—and that he committed further legal and factual errors in the process. *Bank of Waunakee*, 906 F.2d at 1191; ECF No. 58 at 1. Plaintiff accordingly wishes the Court to correct those errors while maintaining Judge Wyrick's ultimate decision to transfer the case to the Eastern District of Wisconsin.

The Court is not persuaded by Plaintiff's claim that Judge Wyrick's findings went "well beyond the issue of venue." *See* ECF No. 58 at 1. The issue before Judge Wyrick was posed by Defendants' May 24, 2021 motion to transfer. Therein, Defendants argued that Plaintiff had contractually agreed that the appropriate venue "for any litigation arising" out of the contracting of the parties would be Wisconsin. ECF No. 18 at 1. Judge Wyrick began his discussion by determining whether the forum selection clause at issue was a part of the contract such that it would be applicable to determining venue. ECF No. 29 at 5. To make such a determination, Judge Wyrick first had to determine the applicable law for interpreting the contract and for determining whether the forum selection clause was a part thereof. *Id*. He accordingly performed a choice of law analysis to determine

Case 2:21-cv-01399-JPS    Filed 11/28/22    Page 5 of 27    Document 70

whether Wisconsin or Oklahoma law was applicable. Applying "Oklahoma choice-of-law provisions," Judge Wyrick concluded that Wisconsin had the "most significant relationship to the contract," meaning that Wisconsin law would be applicable in interpreting the contract. *Id*. at 6. To reach this conclusion, Judge Wyrick considered various "most significant relationship" factors and was also guided by the "fundamental choice-of-law principles discussed in Restatement (Second) of Conflict of Laws." *Id*.

Having determined that Wisconsin law governed the contract's interpretation, Judge Wyrick proceeded in applying it to determining whether the forum selection clause was incorporated into the contract. *Id*. at 8. Applying "Wisconsin contract law," Judge Wyrick concluded that "the full Terms and Conditions of Sale—including the forum selection clause—were validly incorporated into the contract." *Id.* at 9. Accordingly, the validly incorporated forum selection clause governed venue. Judge Wyrick utilized the next several pages of the order to discuss Bakery Bling's arguments to the contrary, none of which Judge Wyrick found persuasive. *Id*. at 9–14.

Judge Wyrick's order was limited to the issue of venue and the arguments provided by the parties relating thereto (such as whether the exercise of personal jurisdiction in the Eastern District of Wisconsin following a transfer would be appropriate, as discussed in Plaintiff's response in opposition to the transfer motion, ECF No. 24 at 22). To the extent that Plaintiff seeks reconsideration on the ground that Judge Wyrick made a decision "outside the adversarial issue" presented to him—namely, outside of the issue of venue and personal jurisdiction—the Court is not persuaded. *See Bank of Waunakee*, 906 F.2d at 1191; ECF No. 58 at 1.

Plaintiff additionally seeks reconsideration on the ground that Judge Wyrick committed both factual and legal error in his transfer order. According to Plaintiff, "[a]lthough the fact of whether the Terms and Conditions existed or not is relevant to Wisconsin's common law governing the rule of incorporation by reference, in this case, it is not outcome determinative. Instead, the analysis of incorporation turns on the express language of the Terms and Conditions itself." ECF No. 58 at 2–3. And according to Plaintiff, "[t]he Terms and Conditions expressly provide that Seller [(i.e., Defendant(s)] is required to perform the additional act of executing the Proposal before incorporation of the Terms and Conditions into the Proposal is effectuated" and "[n]either Matrix nor ProMach executed the Proposal." *Id.* at 3. Plaintiff claims that "Judge Wyrick missed this express language in the Terms and Conditions" and erred as a result. *Id.* Moreover, Plaintiff claims that "Judge Wyrick made the factual finding that both parties had executed the Proposal," which finding Plaintiff argues was unsupported by the record. *Id.*

As noted previously, reconsideration is not a proper forum for "arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole,* 90 F.3d at 1270. The Court has reviewed the brief Plaintiff submitted in opposition to Defendants' transfer motion, *see* ECF No. 24, and Plaintiff does not therein substantively or meaningfully argue that because Defendants had not signed the contract, the Terms and Conditions were not incorporated therein. Instead, Plaintiff primarily argued that Oklahoma law governed the interpretation of the contract; that the full online Terms and Conditions were not accessible online at the time of contracting; that the contract did not make clear reference to the online Terms and Conditions; that Plaintiff

had no knowledge of the online Terms and Conditions; and that the forum selection clause is permissive, ambiguous, and invalid. But Plaintiffs did not clearly and substantively argue that the forum selection clause was unenforceable because it was never properly incorporated due to Defendants' failure to sign the contract. The only references in Plaintiff's opposition to Defendants' non-execution of the contract are the following:

> Finally, the term "Order Documentation" refers to the Contract signed by "Seller", but neither Defendant signed the Contract . . . .
> . . .
>
> Third, the term "Order Documentation" is defined in the Terms and Conditions as "the quotation, order acknowledgment, invoice or other correspondence . . . signed by Seller incorporating These Terms and Conditions . . ." See 2019 Terms and Conditions, attached to Eklund Aff. In Motion to Transfer as Ex. B. ¶ 1. However, the Contract was never signed by either Defendant, and the Defendants occupy two separate principal places of business. Finally, the clause references only jurisdiction and not venue.

ECF No. 24 at 7, 26–27.

In contrast, Plaintiff focused "[m]uch of its briefing," ECF No. 29 at 9, on the fact that the URL link which ostensibly took one to the online Terms and Conditions was broken. After Plaintiff dedicated the bulk of its briefing on the transfer motion to that issue, it is somewhat odd for Plaintiff now to claim that "[a]lthough the fact of whether the Terms and Conditions existed or not is relevant to Wisconsin's common law governing the rule of incorporation by reference, in this case, it is not outcome determinative." ECF No. 58 at 2–3. This gives the Court the impression that Plaintiff now regrets having focused on one issue when perhaps it ought to have done so on another.

For this reason, and because Judge Wyrick explicitly addressed Plaintiff's argument that the "contract was invalid as it was "never signed by either Defendant" by asserting that "for a contractual provision to be enforced, it need only be adopted 'by the person sought to be charged with performance,'" ECF No. 29 at 13, the Court will not conclude that Judge Wyrick "missed" this argument. *See* ECF No. 58 at 3. If Plaintiff considered this argument regarding Defendants' non-execution of the contract highly relevant to its opposition to transfer, it may have been prudent to highlight it more clearly in its brief thereto, beyond three sentences out of a 26-page document. Plaintiff now argues that this express language is dispositive— that "the analysis of incorporation turns on the express language of the Terms and Conditions itself" and that it is "material as it goes straight to the heart of the elements to establish incorporation." ECF No. 58 at 2–3. If that is so, it is not clear why Plaintiff dedicated only three sentences to the subject in the entirety of its brief in opposition to the transfer motion, while utilizing a far greater portion of its brief discussing an issue Plaintiff now claims is "not outcome determinative." ECF No. 58 at 2–3. Judge Wyrick addressed the arguments that were substantively and meaningfully argued before him.

The Court now addresses Plaintiff's claims that (1) Judge Wyrick committed legal error by "deciding contested factual disputes and the merits of this case without first holding an evidentiary hearing or a trial on the merits," *id.* at 4, and (2) Judge Wyrick committed factual error in finding that "both parties had executed the Proposal" and that "the Terms and Conditions were incorporated into the Proposal without the additional act of signing by Matrix or Promach," *id.* at 3.

As to Plaintiff's claim of legal error by Judge Wyrick, a court is not obligated to hold an evidentiary hearing on a motion for transfer. *See 1 Moore's AnswerGuide: Fed Civil Motion Practice* § 4.06 ("A court deciding a motion opposing venue has discretion over whether or not to hold an evidentiary hearing."); *Cardoni v. Prosperity Bank*, No. 14-CV-0319-CVE-PJC, 2014 U.S. Dist. LEXIS 93068, at *15 (N.D. Okla. July 9, 2014) (noting in the context of a motion to transfer venue that the court has the discretion to hold an evidentiary hearing to resolve disputed factual issues). It was not, therefore, manifest error for Judge Wyrick to decline to hold an evidentiary hearing on the transfer motion. This conclusion is bolstered by the fact that Plaintiff never requested an evidentiary hearing after Defendants filed their motion to transfer. *See United States v. Sandoval*, 390 F.3d 1294, 1301 (10th Cir. 2004) ("Generally speaking, an evidentiary hearing is not required unless the requesting party shows that he will produce relevant evidence.").

Nor has the Court found any authority indicating that Judge Wyrick was obligated to refrain from deciding contested factual issues relevant to a motion to transfer until "a trial on the merits," and Plaintiff provides no authority in support of its assertion of this alleged legal error. *See* ECF No. 58 at 4. It is true that "[g]enerally, issues of fact in a lawsuit are resolved by a jury at trial," at least in the context of material issues of fact at the summary judgment stage. *Summary Judgment Fundamentals (OK).* However, adjudication of a motion to transfer is "committed to the sound discretion of the trial judge," and the district court is tasked with deciding a motion to transfer on a "case-by-case basis, considering all relevant contextual circumstances within the appropriate statutory framework and making any factual findings that are necessary for determining venue issues." *Craik v.*

*Boeing Co.*, 37 F. Supp. 3d 954, 959 (N.D. Ill. 2013) (internal citations omitted).

And again, Plaintiff never raised the issue in its response to the transfer motion back in 2021. Motions for reconsideration are "not an appropriate forum for . . . arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole,* 90 F.3d at 1270. If Plaintiff believed there were issues of fact material to the transfer motion, the dispute of which warranted either an evidentiary hearing or resolution at trial rather than on the papers, then Plaintiff ought to have raised that concern to Judge Wyrick in its response in opposition to the transfer motion. Plaintiff did not do so, and it now regrets that failure in light of a decision adverse to its interests. That is not the concern of the Court. And if Plaintiff genuinely believed Judge Wyrick to have committed legal error in this respect, it ought to have provided legal support for that belief rather than presenting it to this Court in the form of a mere bald assertion.

As to Plaintiff's claim of factual error by Judge Wyrick, the Court has reviewed Judge Wyrick's transfer order and confirmed that, in the "Conclusion" section of the order, the court stated that "the *parties* signed a contract with a valid and enforceable forum selection clause." ECF No. 29 at 14 (emphasis added). Defendants concede that neither Defendant ever physically signed the Proposal but maintain that this detail is immaterial for purposes of incorporation by reference of the Terms and Conditions because the requisite manifested assent does not require a "physical signature on a document." ECF No. 64 at 9–10.

The Court agrees with Plaintiff that Judge Wyrick's assertion that "the parties signed a contract with a valid and enforceable forum selection

Case 2:21-cv-01399-JPS   Filed 11/28/22   Page 11 of 27   Document 70

clause" appears to have been a misstatement. *See* ECF No. 29 at 14. The Proposal is signed by "Trevor Brooks" for the "Purchaser," while the signature lines for "Matrix Packaging Machinery, LLC" remain blank. ECF No. 58-1. Defendants do not appear to dispute that fact. Thus, to the extent that Judge Wyrick found that all parties signed the Proposal, that finding was in error, and the Court will vacate it. The question now becomes whether Judge Wyrick's erroneous factual finding was material or dispositive in his legal conclusion that the Terms and Conditions of Sale were incorporated into the contract, and if so, whether his reliance on that erroneous factual finding to reach that conclusion constitutes a "manifest error"—one that was "clearly erroneous," the maintenance of which would "work a manifest injustice." *Rothwell Cotton Co.,* 827 F.2d at 251; *Williams,* 2020 U.S. Dist. LEXIS 109112, at *5.

As to that first question, it appears that Judge Wyrick did not rely, at least explicitly, on his later-stated conclusion that the parties had signed the contract in concluding that the Terms and Conditions of Sale were incorporated into the contract. He wrote:

> The contract clearly identifies both the existence of additional terms and the exact document containing the additional terms: an examination of the contract reveals a bolded heading titled "Full terms and Conditions of Sale found on our website." The bolded heading informs a reasonably prudent reader that there are terms and conditions in addition to those previously listed in the contract, and the capitalized reference to "Terms and Conditions of Sale" indicates to a reasonably prudent reader that a specific document detailing the additional terms exists and may be obtained from Matrix. Following this clear identification in the original contract, Baker Bling—the party charged with performance of the forum selection clause—manifested its adoption of all terms and conditions by signing the contract immediately after the

language "[o]nce signed and accepted, both parties agree to abide by the terms and conditions of this quotation." Given this clear identification of additional extrinsic terms and a manifestation of adoption, the Court concludes that under Wisconsin law the full Terms and Conditions of Sale—including the forum selection clause—were validly incorporated into the contract.

ECF No. 29 at 8–9.

Judge Wyrick acknowledged Plaintiff's signature in reference to the Proposal's language: "**Full terms and conditions:** All Matrix Packaging Machinery customer orders are subject to the Terms and Conditions of Sale found on our website at www.matrixpm.com/contact/terms-and-conditions . . . *Once signed and accepted, both parties agree to abide by the terms and conditions of this quotation.*" ECF No. 58-1 at 6 (emphasis added). He did not interpret that language as requiring the signatures of both parties for purposes of incorporation. "Bakery Bling also argues that the contract was invalid as it was 'never signed by either defendant,'" Judge Wyrick wrote, "but for a contractual provision to be enforced, it need only be adopted 'by the person sought to be charged with performance.'" ECF No. 29 at 13 (citing Wis. Stat. Ann. § 402.201(1)).

On the one hand, it could be argued that the presence of signature lines on the Proposal for both Buyer (Plaintiff) and Seller (Defendants) could suggest that the language "[o]nce signed" refers to an expectation that both parties would sign to manifest their intent to "abide by the terms and conditions of this quotation." ECF No. 58-1 at 6. But on the other hand, the Proposal does not expressly say "[o]nce *both parties* signed." And the sentence's reference to "acceptance" could fairly be interpreted as being in reference only to Plaintiff as buyer—only Plaintiff had the power to accept

the terms of the Proposal. That being the case, the phrase could be understood as meaning that once Plaintiff signed and accepted the Proposal, both parties would agree to abide by the terms and conditions therein. And as noted by Judge Wyrick, Wisconsin law explicitly states that "[e]xcept as provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and *signed by the party against whom enforcement is sought* . . . ." Wis. Stat. § 402.201(1) (emphasis added).

Also relevant is that Plaintiff itself accepts Judge Wyrick's interpretation of the Proposal's language, writing that "the Proposal required Bakery Bling to demonstrate its assent to the Terms and Conditions by executing the Proposal." ECF No. 58 at 3. Plaintiff did not write that the Proposal's language required both Bakery Bling and Matrix to sign the Proposal to demonstrate their assent to the terms and conditions. Instead, Plaintiff argues that the extrinsic document itself—the Terms and Conditions of Sale—required "Matrix and/or ProMach to demonstrate their assent to the incorporation and adoption of the Terms and Conditions by executing the Proposal." *Id*. But this strikes the Court as a circular proposition. This argument proposes that to determine whether an extrinsic document is incorporated into a contract—or is, in other words, even part of the contract—the Court should look to the extrinsic document's language. It asks the Court to look to the extrinsic document and accept its language as being a part of the contract in order to determine whether that extrinsic document is, in fact, part of the contract. And ironically, Plaintiff later writes that "the Proposal is complete in and of itself so that the intent

of the parties can be ascertained within its four corners. The Terms and Conditions are not core to the parties' agreement . . . ." *Id*. at 4.

In other words, Plaintiff wants the Court to acknowledge the Terms and Conditions to the extent that it believes that the extrinsic document imposes a signature requirement on Defendants to trigger incorporation thereof, but it wants the Court to ignore the Terms and Conditions to the extent that they involve disadvantageous terms—for example, a damages cap. *See id.* at 3–4. In similar inconsistent fashion, Plaintiff requests that the Court vacate Judge Wyrick's findings and holding regarding incorporation, but that it not vacate Judge Wyrick's conclusion (based, at least in part, on those findings) that the case be transferred to this Court. *See id*. at 12 (requesting the Court to vacate the transfer order but to maintain the venue transferred to the Court thereby); ECF No. 57 at 2 ("Bakery Bling prays this Court to enter an order . . . vacating the *Transfer Order* save and except that part transferring this case to the Eastern District of Wisconsin."). The Court is not persuaded by Plaintiff's arguments.

In determining whether a contract incorporates an extrinsic document, the Court looks not to the language of the extrinsic document, but rather to the language of the contract. *See Bad River Band of the Lake Superior Tribe of Chippewa Indians of the Bad River Reservation v. Enbridge Energy Co.*, No. 19-cv-602-wmc, 2022 U.S. Dist. LEXIS 161080, at *20 (W.D. Wis. Sep. 7, 2020) (quoting 11 Williston on Contracts § 30:25 (4th ed.) ("When a *writing* refers to another document, that other document, or the portion to which reference is made, becomes constructively a part of the *writing*, and in that respect the two form a single instruction.") (emphasis added)). This is so because the contract incorporates the extrinsic

document—the extrinsic document does not incorporate itself into the contract.

It would be premature and circular to look to the terms of the extrinsic document as part of this incorporation analysis, because by definition the extrinsic document has not yet been determined to be a part of the contract. Although noting that "[n]one of the cases relied upon by Judge Wyrick involved an extrinsic document that required an additional act by one or more of the parties to effectuate incorporation," ECF No. 58 at 3, Plaintiff does not provide any such cases, in this circuit or otherwise. Perhaps this is because of the circular reasoning involved in the concept proposed, such that examples of its application are scant. As to this, the Court can only guess. Because of what appears to the Court to be a flaw in reasoning as to the proposed application of the incorporation doctrine, and because Plaintiff provides no authority to support its proposed alternative to that undertaken by Judge Wyrick, the Court will not look to the language of the Terms and Conditions of Sale in determining whether that extrinsic document was incorporated into the contract—or, more accurately, whether Judge Wyrick committed manifest error in concluding that it was.

Plaintiff's motion for reconsideration does not appear to argue that Judge Wyrick's choice of law analysis finding the applicability of Wisconsin contract law was erroneous. *See* ECF No. 58 at 3 (discussing incorporation pursuant to Wisconsin law). Accordingly, the Court will not disturb that decision. The parties agree that "Wisconsin law requires mutual assent of the parties to the adoption and/or incorporation of the extrinsic document." *Id*. "The parties may agree to incorporate another document by reference, but a manifestation of mutual assent to this end is necessary." *Little Chute*

*Area Sch. Dist. v. Wis. Educ. Ass'n Council*, 892 N.W.2d 312, ¶ 31 (Wis. Ct. App. 2017).

The Court is guided by a persuasive, but out-of-circuit, case with similar factual context. In *Segenvo, LLC v. Providian Medical Equipment, LLC*, the Southern District of Texas analyzed a dispute over whether a standard terms and conditions of sale document was incorporated into a sales agreement. *See generally* No. H-19-1300, 2019 U.S. Dist. LEXIS 179744 (S.D. Tex. Oct. 17, 2019). That case, too, involved the sale of a machine to be used in the buyer's business. *Id.* at *2. The sales agreement itself stated that the "[s]tandard terms and conditions are set forth on the attached Terms of Sale, which is hereby incorporated by reference as if fully rewritten herein." *Id.* at *20. The buyer signed that sales agreement. *Id.* The separate document, the standard terms and conditions of sale, also bore a signature line accompanied by the language "Agreed to by Customer." *Id.* That line remained blank. The buyer acknowledged that the "Sales Agreement states that it incorporates the 'Standard terms and conditions as set forth on the attached Terms of Sale,'" but argued that because, *inter alia*, "its representative intentionally did not sign the Standard Terms and Conditions of Sale because he did not agree with them," the Sales Agreement did not incorporate them. *Id.* at *20–21. In other words, the buyer argued, *inter alia*, that the court should acknowledge and prioritize the language in the extrinsic document over that of the contract itself. The court was not persuaded and concluded that the "language in the Sales Agreement . . . unambiguously and fully incorporates a document entitled 'Terms of Sale' . . . ." *Id.* at *23. This was so irrespective of the extrinsic document's signature requirement. The court wrote that it took "note of the fact that the allegedly incorporated document, Standard Terms and

Conditions of Sale, contains a signature line and that there is no signature on the document," but that buyer "has cited no law indicating that failure to endorse a separate form that is unambiguously incorporated into a contract supports a resort to extrinsic evidence to determine the parties' intent." *Id.* at *23–24.

Plaintiff was provided a Proposal that clearly and unambiguously referenced the applicability of supplemental Terms and Conditions. *See* ECF No. 58-1 at 6. That language was bolded and stated expressly that "[a]ll Matrix Packaging Machinery customer orders are subject to the Terms and Conditions of Sale found on our website . . . ." *Id.* Plaintiff was therefore constructively aware of the applicability to its transaction of those Terms and Conditions of Sale, and Plaintiff signed the Proposal including that language. The parties thereafter proceeded in performing the contract—Defendant accepted the Proposal as signed by Plaintiff and caused the machine at issue to be manufactured in Spain and then delivered to Plaintiff. ECF No. 51 at 4. Neither party ever, prior to this litigation, suggested or made any indication that they did not intend to be bound by those Terms and Conditions of Sale.

Plaintiff has not met its heavy burden in convincing the Court that Judge Wyrick committed manifest error in concluding that the Proposal incorporated the Terms and Conditions of Sale, including the forum selection clause. For that reason and those discussed above, the Court will deny Plaintiff's motion for reconsideration of Judge Wyrick's transfer order in all respects, except to the extent that it erroneously found that all parties had signed the Proposal.

3.      **MOTION FOR DECLARATORY JUDGMENT**

Plaintiff also seeks declaratory relief pursuant to 28 U.S.C. §§ 2201–2202. ECF No. 55 at 1; Fed. R. Civ. P. 57. Although that motion is presented under a different name and pursuant to different legal standards, it seeks, at least in part, to accomplish the same end, and through the same arguments, as that of the motion for reconsideration. Plaintiff writes:

> Defendants Matrix and ProMach each assert the Terms and Conditions of Sale dated January 2019 . . . and the Terms and Conditions of Sale dated March 2020 . . . are incorporated into the Proposal under the terms of the paragraph titled "Full terms and conditions" on page 6 of the Proposal. Bakery Bling disagrees. The express language of Paragraph 1 of the Terms and Conditions requires the "Seller" to execute the Proposal to trigger the incorporation of the Terms and Conditions into the Proposal. Neither Matrix nor ProMach executed the Proposal. Therefore, the triggering event never occurred and, by operation of its own plain and unambiguous language, the Terms and Conditions were not incorporated by the Seller into the Proposal . . .

ECF No. 55 at 1–2.   Accordingly, Plaintiff asks the Court to "exercise its discretion and declare [that] the Terms and Conditions are not incorporated into the Proposal." *Id*. at 2. Because the Court has fully addressed this issue in its discussion above for Plaintiff's motion for reconsideration, the Court will not reconsider the issue here.

Further, Plaintiff seeks "declaratory judgment that both Matrix and ProMach are parties to the Proposal." *Id*. at 2. According to Plaintiff, "Matrix admits it is a party to the Proposal but ProMach does not." *Id*. (citing ECF No. 53, Defendants' Answer to First Amended Complaint). In support of this request, Plaintiff asserts that "ProMach held itself out as a contracting party throughout the Proposal." *Id*.

### 3.1    Declaratory Judgment Standard

Pursuant to 28 U.S.C. § 2201(a), "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States. . . . may declare the rights and other legal relations of any interested party seeking such declaration." "In order for the Court to issue a declaratory judgment, 'there must be a dispute which "calls, not for an advisory opinion upon a hypothetical basis, but for an adjudication of present right upon established facts.""" *Evergreen Square of Cudahy v. Wis. Hous. & Econ. Dev. Auth.*, No. 13-CV-743-JPS, 2016 U.S. Dist. LEXIS 42, at *46 (E.D. Wis. Jan. 4, 2016) (internal citations omitted). "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Alcan Aluminium Ltd. v. Dep't of Rev. of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984) (internal citation omitted).

"[E]ven where a case presents an actual controversy," however, "a court may refuse to grant declaratory relief for prudential reasons." *Id.* For example, when a traditional remedy "provides the parties with the procedural safeguards required by the law to insure [sic] the availability of a proper remedy, the courts, in exercising their discretion, may properly dismiss the declaratory judgment action." *Cunningham Bros. v. Bail,* 407 F.2d 1165, 1169 (7th Cir. 1969).

The Court is satisfied that the declaratory relief sought relates to the current dispute rather than a "hypothetical basis." *Evergreen Square*, 2016 U.S. Dist. LEXIS 42, at *46. In light of a trial date less than two months away, the Court will exercise its discretion to consider the merits of Plaintiff's motion for declaratory judgment.

### 3.2 Parties to a Contract

Plaintiff moves the Court to "declare who are the parties to the Proposal." ECF No. 55 at 4. "[T]he Proposal identifies Bakery Bling as the 'Purchaser' but does not identify the seller." *Id*. According to Plaintiff, "Matrix admits that it is a party to the Proposal but ProMach denies it is a party." *Id.* In contrast, Defendants argue that "any reasonable reading of the Contract makes clear that the Contract was entered into by Matrix and Bakery Bling and not by Matrix's parent company, Pro Mach." ECF No. 61 at 1. Accordingly, the Court must determine whether ProMach is a party to the contract.

Under Wisconsin law, the primary goal in contract interpretation is to "give effect to the parties' intent, as expressed in the contractual language." *Md. Arms Ltd. P'ship v. Connell*, 786 N.W.2d 15, ¶ 22 (Wis. 2010) (internal citation omitted). "We interpret the language 'consistent with what a reasonable person would understand the words to mean under the circumstances.'" *Id*. (internal citation omitted).

"Privity of contract is the relationship that exists between the parties to a contract." *Thomson v. United Water Servs. Milwaukee LLC*, No. 00-3332, 2001 Wisc. App. LEXIS 1029, at *5, 638 N.W.2d 393, ¶ 10 (Wis. Ct. App. 2001) (internal citation omitted). "Privity of contract is essential in a cause of action based on breach of contract." *Kinsey v. Temo Inc.*, No. 2006AP1626, 2007 Wisc. App. LEXIS 613, at *7, 738 N.W.2d 191, ¶ 9 (Wis. Ct. App. 2007). "A 'party' is defined as 'one who takes part in a transaction." *Thomson,* 2001 Wisc. App. LEXIS 1029, at *6 (quoting Black's Law Dictionary 1144 (7th ed. 1999)). "Therefore, privity to a contract implies 'a connection, mutuality of will, and interaction' between those who take part in the transaction." *Id*. (citation omitted).

"A basic tenant of corporate law is that subsidiaries and parent corporations are designed to be legally separate from one another." *Berndt v. Fairfield Resorts, Inc.*, 337 F. Supp. 2d 1120, 1130–31 (W.D. Wis. 2004) (internal citation omitted). "Rights made by contract with a subsidiary are the subsidiary's rights alone. They do not automatically transfer to a parent company solely by virtue of common ownership." *Id*. at 1131.

According to Defendants, ProMach is the parent company of Matrix. ECF No. 61 at 8. Plaintiff references a theory of agency twice in its brief in support of its motion for declaratory judgment but does not properly develop an argument under that theory, and so the Court will not evaluate whether ProMach may be liable on the contract as principal under an agency theory. *See Damon v. Grand Trunk R.R., Inc.*, No. 2:05-CV-60, 2006 U.S. Dist. LEXIS 67337, at *14–15 (N.D. Ind. Sep. 19, 2006) ("The Court will not do a party's legal research for it nor make a party's arguments for it.") (citing *Tyler v. Runyon*, 70 F.3d 458, 465 (7th Cir. 1995)).[2] A party forfeits an argument that it fails to properly develop. *Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014). Plaintiff brought the present motion for declaratory judgment, and Plaintiff bears the burden of convincing the Court that it should be granted. It is not the duty of the Court to refine and flesh out an argument which the proffering litigant has failed to develop.

_____

[2]At one point, Plaintiff notes that "[t]his fact also demonstrates that ProMach is acting as an agent for Matrix thereby binding it to the terms of the Proposal," in reference to the Proposal's identification of Amy Risch as the Matrix Contact. ECF No. 55 at 9. Plaintiff additionally writes that "Wisconsin's common law recognizes that contractual rights and obligations extend to non-signatories under common law principles including assumption, equitable estoppel, and agency." *Id*. at 8. These are the only references in Plaintiff's brief in support as to an agency theory. Plaintiff has failed to develop this argument, and Plaintiff has consequently forfeited it.

Plaintiff's references here to an agency theory are "perfunctory and underdeveloped," and accordingly the Court will not consider them. *Id.* ("[T]he Court will not decide issues not adequately addressed by the parties.").

In *Thomson*, the court concluded that Thomson was not a party to the contract after determining that other individuals, and not Thomson, had "negotiated the essential terms and executed the document as representatives of their respective companies." *Thomson*, 2001 Wisc. App. LEXIS 1029, at *6.

Here, ProMach did not execute the Proposal, nor was there a signature line intended for ProMach. Matrix also did not execute the contract, but there was a signature line intended for Matrix thereon. *See* ECF No. 58-1 at 7. ProMach's name appears above Matrix's on the left-hand corner of each page of the Proposal, but it is in a smaller font than that utilized for Matrix's name and logo. The first page of the Proposal provides that it is presented to "Bakery Bling" and lists Plaintiff's customer contact as "Lauren Brooks." ECF No. 58-1 at 1. Below that, the Proposal provides that it is "Presented By" "Spencer Johnson," which name is accompanied by a ProMach email address. Also on page one, the Proposal provides a "Matrix Contact" named "Amy Risch," for whom a ProMach email address is also listed. *Id*. at 1. On the final page of the Proposal, the contact Spencer Johnson is reiterated beneath a section entitled "ABOUT MATRIX," but before a section entitled "ABOUT PROMACH." *Id*. at 7. The placement of this reiteration suggests that Spencer Johnson, like Amy Risch, may be a

Matrix employee, and that Matrix contacts generally have email addresses provided by or through the parent company, ProMach.[3]

Throughout the body of the Proposal, references are made to Matrix and its responsibilities and anticipated relationship to the transaction. The same is not true of ProMach. For example, page three states that "Matrix cannot accept responsibility for the performance of a feed system not purchased through Matrix . . . ." ECF No. 58-1 at 3. Page four states that "Matrix, at its option and mutually agreed upon by both parties, may also provide interfacing with peripheral equipment not purchased from Matrix." *Id*. at 4. The body of the Proposal references a "Matrix Technician" or "Matrix Service Technician," but nowhere references any ProMach personnel. Page six indicates that "Matrix now offers extensive training workshops" and that "Matrix may require samples of the product the customer intends to package with the quoted equipment." *Id*. at 6. The Proposal does not mention ProMach in the context of having any role in the transaction or any responsibilities relating thereto. Plaintiff does not allege that ProMach participated in any negotiations relating to the transaction. Nor does Plaintiff allege that anyone represented to it, or made any

---

[3]Plaintiff asserts that the Proposal refers to "a ProMach employee as the contract [sic] person." ECF No. 55 at 4. Plaintiff does not explain on what basis it concludes that the contacts listed are ProMach employees. The Court assumes that Plaintiff asserts this based on the ProMach email addresses listed for the contacts provided by the Proposal. However, as noted by the Court, those two contacts, Spencer Johnson and Amy Risch, are referenced either specifically as a "Matrix Contact," ECF No. 58-1 at 1, or are reiterated within the context of the "ABOUT MATRIX" section, *id*. at 7. Those contacts are nowhere in the Proposal expressly identified as ProMach employees. If they are, indeed, ProMach employees, this has not been made clear to the Court.

indication to it, that ProMach would be a party to the contract or would have any involvement therein.

The final page of the Proposal provides two paragraphs of background information about ProMach, including that it is a "family of best-in-class packaging solution brands" and that it is "headquartered near Cincinnati, Ohio with manufacturing facilities and offices throughout" the world. *Id*. at 7. But none of this information relates specifically to the transaction proposed.

Interpreting "the language 'consistent with what a reasonable person would understand the words to mean under the circumstances,'" as the Court must under Wisconsin law, *see Connell*, 786 N.W.2d at ¶ 22, the Court concludes that a reasonable person would not read the Proposal and conclude that it established any privity of contract with ProMach. It is true that the Proposal does not expressly identify ProMach as the parent company of Matrix. But neither does the Proposal expressly identify ProMach as a Seller. To the extent that ProMach is referenced in the Proposal, it is only to provide general background about the company. But no language in the Proposal indicates that ProMach had any rights or responsibilities associated with the transaction. The Court concludes that the Proposal established no privity of contract with ProMach.

Plaintiff also makes an equitable estoppel argument, but it too is deficient. In order for equitable estoppel to apply, the following three elements must be present: "(1) Action or nonaction which induces (2) reliance by another (3) to his detriment." *Coconate v. Schwanz*, 477 N.W.2d 74, 75 (Wis. Ct. App. 1991) (internal citation omitted). "For purposes of equitable estoppel, the reliance must be justifiable or

reasonable." *Id.* "The burden of proving the elements of equitable estoppel is on the party asserting it as a defense." *Id.*

Plaintiff claims that it relied on ProMach being a party to the Proposal, but this claim is conclusory and unsupported. *See* ECF No. 55 at 9 ("Bakery Bling relied on these facts when it entered into the agreement . . . ."). Plaintiff does not there elaborate as to why it allegedly relied on ProMach's being a party to the proposal. A single conclusory sentence is the extent of Plaintiff's assertion of its reliance in its brief in support of its motion. Plaintiff reiterates this with similar brevity in its reply. ECF No. 65 at 9 ("Bakery Bling executed the Proposal presented to it by ProMach wherein ProMach held itself out as an international designer and manufacturer of 'the most sophisticated and advanced packaging solutions in the global marketplace.'").

Moreover, Plaintiff makes no attempt at arguing that its alleged reliance was "justifiable or reasonable" as required to demonstrate equitable estoppel. *See Coconate*, 477 N.W.2d at 75. As noted above, the Court will not waste its time analyzing an argument that the proffering party itself had not even fully argued. *See Damon,* 2006 U.S. Dist. LEXIS 67337, at *14–15 ("The Court will not do a party's legal research for it nor make a party's arguments for it.") (citing *Tyler*, 70 F.3d at 465).

Accordingly, the Court will deny Plaintiff's motion for declaratory judgment.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for declaratory judgment, ECF No. 54, be and the same is hereby **DENIED;** and

**IT IS FURTHER ORDERED** that Plaintiff's motion for reconsideration, ECF No. 57, be and the same is hereby **GRANTED in part and DENIED in part**.

Dated at Milwaukee, Wisconsin, this 28th day of November, 2022.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge